United States District Court
Southern District of Texas
**ENTERED**
November 14, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALEXANDER SALGAR, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:25-CV-04797 |
| | § | |
| KRISTI NOEM, *et al.*, | § | |
| | § | |
| Respondents. | § | |

## ORDER

Before the Court are Petitioner Alexander Salgar's Petition for Writ of Habeas Corpus (Doc. #1), Respondents' Response (Doc. #5), and Petitioner's Reply (Doc. #8). The Court heard oral argument on November 7, 2025. Having considered the parties' arguments and the applicable legal authority, the Court grants the Petition for Writ of Habeas Corpus.

**I.     Background**

Petitioner Alexander Salgar ("Petitioner") is a citizen of Colombia. Doc. #1 at 5. He entered the United States on July 31, 1990, when he was four years old pursuant to a Non-Immigrant Visitor Visa. Doc. #1, Ex.1. Petitioner was placed in removal proceedings and his voluntary departure was granted on March 18, 2003. Doc. #1, Ex. 2. On May 17, 2004, Petitioner's appeal was dismissed by the Board of Immigration Appeals ("BIA"), and the Order of Removal became final on June 16, 2004. *Id.*; Doc. #5, Ex. 1 at 3. On October 17, 2011, Petitioner was released on an Order of Supervision and was required to regularly report. Doc. #1, Ex. 3. Petitioner has been living under the Order of Supervision for more than thirteen years and ten months, and he has complied with its conditions. *Id.*

On August 6, 2024, Petitioner filed an I-360 self-petition with the U.S. Citizenship and

Immigration Services ("USCIS") seeking protection under the Violence Against Women Act ("VAWA") as a battered spouse. Doc. #1, Ex. 4. On September 26, 2024, USCIS issued a prima facie determination of Petitioner's I-360 VAWA Petition. Doc. #1, Ex. 5. Nearly a year later, on August 19, 2025, Immigration and Customs Enforcement ("ICE") took Petitioner into custody and transferred him to the Montgomery Processing Center in Conroe, Texas. Doc. #5, Ex. 1 at 4. Shortly thereafter, on August 27, 2025, Petitioner filed a motion to reopen his removal proceedings, relying on the USCIS's prima facie VAWA determination. Doc. #1, Ex. 6. Petitioner's motion remains pending before the BIA. Doc. #1 at 6.

On September 28, 2025, Petitioner further filed a petition for writ of mandamus in the Southern District of Texas seeking to compel a decision on his I-360 VAWA Petition. *See Salgar v Noem et al.*, 4:25-cv-04613 (S.D. Tex. Sept. 28, 2025). On October 8, 2025, Petitioner filed the instant Petition for Writ of Habeas Corpus before this Court, requesting release from detention and reinstatement of his prior Order of Supervision. *Id.* at 10. The Court heard oral argument on November 7, 2025.

## II.  Legal Standard

To be entitled to the issuance of a writ of habeas corpus, a habeas petitioner must show they are "in custody in violation of the Constitution or laws or treaties of the United States." *Villanueva v. Tate*, No. CV H-25-3364, 2025 WL 2774610, at *4 (S.D. Tex. Sept. 26, 2025) (quoting 28 U.S.C. § 2241(c)(3)). The petitioner "bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence." *Id.* (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); also citing *Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976)). "A court considering a habeas petition must 'determine the facts, and dispose of the matter as law

and justice require.'" *Id.* (quoting 28 U.S.C. § 2243).

**III.   Analysis**

Petitioner challenges his detention on two principal grounds: (1) that ICE violated his due process rights by failing to follow its own procedures and regulations in revoking his Order of Supervision; and (2) that his detention violates *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) and the Immigration and Nationality Act because he is being held indefinitely without a reasonably foreseeable removal date. Doc. #1 at 7–10. The Court will address Petitioner's arguments in turn.

### a. Procedural Requirements Governing Revocation of Supervision

Petitioner first argues that his detention violates the Due Process Clause because ICE failed to follow the procedural requirements set forth in its own regulations when revoking his Order of Supervision. Doc. #1 at 10. In this case, Petitioner has been on supervised release since October 17, 2011, following a determination that he was nonviolent, posed no danger to the community, was unlikely to violate the conditions of his release, and did not present a flight risk. *See* 8 C.F.R. §§ 241.4(d)(1), (e). Under the governing regulations, an Order of Supervision may be revoked if the noncitizen violates its conditions. *See* 8 C.F.R. §§ 241.4(l)(1), (l)(2)(ii). In addition, an Order of Supervision may be revoked when it is appropriate to enforce a removal order or when "[t]he conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate." 8 C.F.R. §§ 241.4(l)(2)(iii), (l)(2)(iv). Revocation authority is limited to the Executive Associate Commissioner of ICE or, when referral to that official is impracticable, a district director of ICE. 8 C.F.R. § 241.4(l)(2). Upon revocation, the noncitizen must "be notified of the reasons for revocation of his or her release" and must be afforded a prompt "initial informal interview" to allow the noncitizen an opportunity to respond to and contest the reasons for

3

revocation. 8 C.F.R. § 241.4(l)(1). These procedures and safeguards provide protection "where the detention or re-detention of noncitizens is necessarily an action that results in the loss of personal liberty that requires due process protections." *Santamaria Orellana v. Baker*, No. CV 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025).

### b. ICE's Noncompliance with Procedural Requirements

Here, Petitioner contends that he was given no explanation for his re-detention, no informal interview, and no opportunity to contest the grounds for revoking his supervision—as the regulations expressly require. Doc. #1 at 10. Respondents do not allege, nor have they provided any evidence to demonstrate, that ICE complied with the required procedural safeguards. Respondents only submit a sworn declaration from Robert Munoz, an ICE Deportation Officer assigned to Petitioner's case. Doc. #5, Ex. 1. Munoz's declaration is silent on whether Petitioner's Order of Supervision was ever revoked, the regulatory justification for any such revocation, or the identity and authority of the official who purportedly authorized its revocation. *See id.*

Absent any evidence that Petitioner's Order of Supervision was revoked for a legally permissible reason by an official with proper authority, Respondents have not shown that they afforded Petitioner with due process in connection with the purported revocation of his Order of Supervision. *See Villanueva*, No. CV H-25-3364, 2025 WL 2774610, at *6 (reaching the same conclusion). Furthermore, to the extent that Petitioner was subject to 8 C.F.R. § 241.13, as referenced in the briefs, the revocation of Petitioner's release violated that regulation as well. Indeed, 8 C.F.R. § 241.13 requires that "the alien will be notified of the reasons for revocation" and that ICE "will conduct an initial informal interview promptly . . . to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3). Again, on the record presented by Respondents, no such notification or informal

4

interview was ever provided to Petitioner. Thus, under any of the potential bases for revocation, Petitioner's re-detention and revoked release violated regulations designed to provide due process.

"Under deeply rooted principles of administrative law, not to mention common sense, government agencies are generally required to follow their own regulations." *Villanueva*, No. CV H-25-3364, 2025 WL 2774610, at *7 (quoting *Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 130 (2d Cir. 2020); *see also Gov't of Canal Zone v. Brooks*, 427 F.2d 346, 347 (5th Cir. 1970) (per curiam) ("It is equally well established that it is a denial of due process for any government agency to fail to follow its own regulations providing for procedural safeguards to persons involved in adjudicative processes before it."). Several courts addressing similar circumstances have held that a failure to adhere to these regulations violates due process. *See, e.g., Bonitto v. Bureau of Immigr. & Customs Enf't*, 547 F. Supp. 2d 747, 756 (S.D. Tex. 2008) ("DHS cannot constitutionally continue to detain [petitioner] without complying with the procedures laid out in the regulations."); *Zhu v. Genalo*, No. 1:25-CV-06523 (JLR), 2025 WL 2452352, at *9 (S.D.N.Y. Aug. 26, 2025) ("ICE's failure to follow its own regulations and provide Petitioner with notice or an interview violated Petitioner's procedural due process rights."); *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 166 (W.D.N.Y. 2025) ("In sum, because ICE did not follow its own regulations in deciding to re-detain [petitioner], his due process rights were violated, and he is entitled to release."); *Rombot v. Souza*, 296 F. Supp. 3d 383, 389 (D. Mass. 2017) ("The Supreme Court has . . . never given ICE a carte blanche to re-incarcerate someone without basic due process protection"); *Villanueva v. Tate*, No. CV H-25-3364, 2025 WL 2774610, at *7 ("The government's position that it can choose, based on a change in administration, not to comply with its own regulations is unprecedented.").

Here, the record is clear that ICE violated its own regulations by failing to have an

authorized official make the revocation decision, failing to provide Petitioner with notification of the reasons for his re-detention, and failing to provide Petitioner with an informal interview. ICE's failure to follow the procedural requirements for revoking Petitioner's Order of Supervision renders Petitioner's detention unlawful. Accordingly, the Court grants the Petition for Writ of Habeas Corpus and orders Petitioner's immediate release

Moreover, because Petitioner is being released at this time, the Court need not reach the question of whether his re-detention violates the *Zadvydas* standard based on the likelihood that Petitioner's removal is not reasonably foreseeable. *See, e.g., Santamaria Orellana*, No. 25-cv-01788, 2025 WL 2444087, at *8 (granting habeas relief where supervision was revoked in violation of ICE's regulations and due process and therefore not reaching question of whether re-detention was otherwise unlawful under *Zadvydas*); *Zhu*, 2025 WL 2452352, at *9 (same).

For the foregoing reasons, Petitioner's petition for writ of habeas corpus is GRANTED. Doc. #1. It is hereby ORDERED that:

1. Respondents shall effect Petitioner's immediate release from custody within forty-eight (48) hours of entry of this Order. Petitioner shall be released in a public place within the Southern District of Texas, and his counsel shall be given notice of the time and place of his release;
2. Petitioner shall comply with the conditions of his prior Order of Supervision while his removal proceedings remain pending;
3. This Order may be served by facsimile, email, or any other means reasonably calculated to provide immediate notice.

It is so ORDERED.

**NOV 1 4 2025**
Date

The Honorable Alfred H. Bennett
United States District Judge